UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

NELSON AREIZAGA-ROSA,

                        Petitioner,

        v.                                              **DECISION AND ORDER**
                                                        14-CV-540S
UNITED STATES OF AMERICA,                               11-CR-116S (8)

                        Respondent.

## I. INTRODUCTION

Presently before this Court is Petitioner Nelson Areizaga-Rosa's pro se Motion to

Vacate, Set Aside, or Correct his Sentence under 28 U.S.C. § 2255.  (Docket No. 304.)

For the reasons discussed below, Areizaga-Rosa's motion is denied.

## II. BACKGROUND

On December 13, 2013, Areizaga-Rosa appeared before this Court and pleaded

guilty to Count 1 of the superseding indictment, which charged him with violating 21

U.S.C. § 846 (conspiracy to possess with intent to distribute, and to distribute, 500 grams

or more of cocaine).  (See Docket Nos. 231, 233.)  Areizaga-Rosa pleaded guilty with the

benefit of a plea agreement, in which he agreed that his maximum possible sentence by

statute was a term of imprisonment of 40 years, a fine of $5,000,000, a mandatory $100

special assessment, and a term of supervised release of up to life.  (Plea Agreement,

Docket No. 231, ¶ 1.)  Areizaga-Rosa further agreed that for purposes of the Sentencing

Guidelines, he had a total offense level of 32 and a criminal history category of either IV

or VI, which resulted in a Guidelines sentencing range of either 168 to 210 months' or

210-262 months' imprisonment (depending on criminal history category), a fine of

$17,500 to $8,000,000, and a term of supervised release of eight years. (Plea Agreement, ¶¶ 6-12.) Notwithstanding these Sentencing Guidelines ranges, however, Areizaga-Rosa and the government agreed under Rule 11 (c)(1)(C) of the Federal Rules of Criminal Procedure that this Court should impose a sentence of 180 months' imprisonment. (Plea Agreement, ¶ 13.)

Areizaga-Rosa also acknowledged and waived his rights to appeal and collaterally attack his guilty plea and sentencing under certain circumstances as follows:

> The defendant understands that Title 18, United States Code, Section 3742 affords a defendant a limited right to appeal the sentence imposed. The defendant, however, knowingly waives the right to appeal and collaterally attack any component of a sentence imposed by the Court which falls within or is less than the highest sentencing range for imprisonment, a fine and supervised release set forth in Section III, ¶ 12 [the Sentencing Guidelines calculations], above, notwithstanding the manner in which the Court determines the sentence. In the event of an appeal of the defendant's sentence by the government, the defendant reserves the right to argue the correctness of the defendant's sentence.
>
> The defendant understands that by agreeing not to collaterally attack the sentence, the defendant is waiving the right to challenge the sentence in the event that in the future the defendant becomes aware of previously unknown facts or a change in the law which the defendant believes would justify a decrease in the defendant's sentence.

(Plea Agreement, ¶¶ 18, 19.)

Areizaga-Rosa further acknowledged that he had a full opportunity to discuss the terms of the plea agreement with his lawyer, that he understood all of the consequences of his guilty plea, that he fully agreed with the contents of the plea agreement, and that he was entering the plea agreement voluntarily and of his own free will. (Plea Agreement, p. 11.)

On April 1, 2014, this Court accepted the Rule 11 (c)(1)(C) provision of the parties' plea agreement and sentenced Areizaga-Rosa to 180 months' imprisonment, no fine, 4 years' supervised release, and a $100 special assessment, in accordance with the parties' agreement. (Docket Nos. 272, 280.) Three years later, this Court reduced Areizaga-Rosa's sentence to 144 months' imprisonment under 18 U.S.C. § 3582 (c)(2) after the United States Sentencing Commission retroactively lowered his sentencing range. (Docket No. 416.)

Immediately after sentencing, Areizaga-Rosa filed a *pro* se Notice of Appeal. (Docket No. 286.) On January 11, 2016, the United States Court of Appeals for the Second Circuit dismissed the appeal as barred by the appeal waiver in the plea agreement with respect to the appeal of the terms of imprisonment and supervised release, and summarily affirmed with respect to the appeal of the conviction, forfeiture, and special assessment. (Docket No. 400.)

Several months after filing his appeal, Areizaga-Rosa filed the instant Motion to Vacate, Set Aside, or Correct his Sentence on July 2, 2014. (Docket No. 304.) He later supplemented his petition on June 1, 2015. (Docket Nos. 356, 357.) After full briefing (Docket Nos. 304, 327, 330, 356), this Court took the motion under advisement without oral argument.

### III. DISCUSSION

#### A.    § 2255 Proceedings

Twenty-eight U.S.C. § 2255 allows federal prisoners to challenge the legality of their sentences. That section provides, in pertinent part, that:

> A prisoner in custody under sentence of a court established by Act of Congress claiming the right to be released upon the ground that the

sentence was imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack, may move the court which imposed the sentence to vacate, set aside or correct the sentence.

28 U.S.C. § 2255 (a).

Importantly, a § 2255 motion is not a substitute for an appeal. See Bousley v. United States, 523 U.S. 614, 621, 118 S. Ct. 1604, 140 L. Ed. 2d 828 (1998) ("Habeas review is an extraordinary remedy and 'will not be allowed to do service for an appeal.'") (quoting Reed v. Farley, 512 U.S. 339, 354, 114 S. Ct. 2291, 2300, 129 L. Ed. 2d 277 (1994)). Relief under § 2255 is therefore narrowly limited, with collateral attack on a final criminal judgment available "only for a constitutional error, a lack of jurisdiction in the sentencing court, or an error of law or fact that constitutes a fundamental defect which inherently results in complete miscarriage of justice." Graziano v. United States, 83 F.3d 587, 589-90 (2d Cir. 1996) (per curiam) (quoting United States v. Bokun, 73 F.3d 8, 12 (2d Cir. 1995) (internal quotation marks omitted)). This narrow limitation preserves respect for finality, allows for the efficient allocation of judicial resources, and recognizes an aversion to retrying issues long after they occur. See Bokun, 73 F.3d at 12 (citations omitted).

To shape the narrow relief available under § 2255, two procedural rules apply to make it more difficult for a defendant to upset a final criminal judgment on collateral review. See Yick Man Mui v. United States, 614 F.3d 50, 53 (2d Cir. 2010). First, the "mandate rule" bars re-litigation of issues already decided on direct appeal. See id.; see also Burrell v. United States, 467 F.3d 160, 165 (2d Cir. 2006); United States v. Perez, 129 F.3d 255, 260 (2d Cir. 1997) ("[I]t is well-established that issues decided on direct

appeal may not be re-litigated in the context of a petition under § 2255.") This includes "not only . . . matters expressly decided by the appellate court, but also . . . re-litigation of issues impliedly resolved by the appellate court's mandate." Yick Man Mui, 614 F.3d at 53 (citing United States v. Ben Zvi, 242 F.3d 89, 95 (2d Cir. 2001)). This rule also bars ineffective-assistance-of-counsel claims that were raised and resolved on direct appeal, as well as those involving factual predicates that while not explicitly raised on direct appeal, were impliedly rejected by the appellate court mandate. See id. at 53-54 (citations omitted). An exception to this rule exists for cases involving intervening changes in the law, in which case the petitioner "must show that there is new law which, when applied to their claims, would result in a different disposition." Chin v. United States, 622 F.2d 1090, 1092 (2d Cir. 1980) ("Reconsideration [of claims previously raised on direct appeal] is permitted only where there has been an intervening change in the law and the new law would have exonerated a defendant had it been in force before the conviction was affirmed on direct appeal.") (citing United States v. Loschiavo, 531 F.2d 659, 664 (2d Cir. 1976)).

Second, the "procedural default" rule bars the collateral review of claims that could have been raised on direct appeal, unless the petitioner shows cause for failing to raise the claims on direct review and actual "prejudice" or actual innocence. See Bousley, 523 U.S. at 622-23 (citations omitted); see also Marone v. United States, 10 F.3d 65, 67 (2d Cir. 1993) ("In order to raise a claim that could have been raised on direct appeal, a § 2255 petitioner must show cause for failing to raise the claim at the appropriate time and prejudice from the alleged error.") This rule does not apply to ineffective-assistance-of-counsel claims, which may be brought in a § 2255 motion regardless of whether they

could have been raised, or were raised, on direct appeal.  See Massaro v. United States, 538 U.S. 500, 508-09, 123 S. Ct. 1690, 1696, 155 L. Ed. 2d 714 (2003).

Discovery in § 2255 proceedings is governed by Rule 6 of the Rules Governing Section 2255 Proceedings for the United States District Courts.  Leave of court is required to engage in discovery, which may be granted for good cause.  See Rule 6 (a).  Such discovery is conducted under the Federal Rules of Criminal or Civil Procedure, or "in accordance with the practices and principles of law."[1]  Id.  The party requesting discovery must provide reasons for the request, which must "include any proposed interrogatories and requests for admission, and must specify any requested documents."  Rule 6 (b).

A petitioner may also be entitled to an evidentiary hearing.  Section 2255 provides that a court shall hold an evidentiary hearing "[u]nless the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief."  To determine whether a hearing is necessary, the court "must review the answer, any transcripts and records of prior proceedings, and any [additional materials submitted by the parties]."  Rule 8 (a).  If a hearing is necessary, the court must appoint an attorney to any moving party who qualifies for the appointment of counsel under 18 U.S.C. § 3006A.  See Rule 8 (c).  A hearing is generally warranted only where the petitioner establishes a plausible claim.  See Puglisi v. United States, 586 F.3d 209, 213 (2d Cir. 2009).

The Second Circuit has further described the standard for holding a § 2255 evidentiary hearing as follows:

> In ruling on a motion under § 2255, the district court is required to hold a hearing "[u]nless the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief." 28 U.S.C. § 2255; see, e.g., Pham v. United States,

---

[1] "If necessary for effective discovery, the judge must appoint an attorney for a moving party who qualifies to have counsel appointed under 18 U.S.C. § 3006A."  Rule 6 (a).

> 317 F.3d 178, 185 (2d Cir. 2003) (§ 2255 does not permit
> summary dismissals of motions that present facially valid
> claims). However, the filing of a motion pursuant to § 2255
> does not automatically entitle the movant to a hearing; that
> section does not imply that there must be a hearing where the
> allegations are "vague, conclusory, or palpably incredible."
> Machibroda v. United States, 368 U.S. 487, 495, 82 S. Ct.
> 510, 7 L. Ed. 2d 473 (1962); see, e.g., Chang v. United States,
> 250 F.3d 79, 85 (2d Cir. 2001). To warrant a hearing, the
> motion must set forth specific facts supported by competent
> evidence, raising detailed and controverted issues of fact that,
> if proved at a hearing, would entitle him to relief. See, e.g.,
> Machibroda, 368 U.S at 494, 82 S. Ct. 510; United States v.
> Aiello, 814 F.2d 109, 113-14 (2d Cir. 1987).

Gonzalez v. United States, 722 F.3d 118, 130-31 (2d Cir. 2013).

Finally, waiver principles also apply. It is by now well established that a knowing and voluntary waiver made as part of a plea agreement is presumptively and generally enforceable. See Sanford v. United States, 841 F.3d 578, 580 (2d Cir. 2016) (per curiam); see also United States v. Riggi, 649 F.3d 143, 147 (2d Cir. 2011); United States v. Hernandez, 242 F.3d 110, 113 (2d Cir. 2001). "An enforceable waiver bars claims based on grounds that arose after, as well as before, the [plea] agreement was signed." Muniz v. United States, 360 F. Supp. 2d 574, 577 (S.D.N.Y. 2005). Thus, "[i]n no circumstance . . . may a [petitioner] who has secured the benefits of a plea agreement and knowingly and voluntarily waived the right to appeal a certain sentence, then appeal the merits of a sentence conforming to the agreement. Such a remedy would render the plea bargaining process and the resulting agreement meaningless." United States v. Salcido-Contreras, 990 F.2d 51, 53 (2d Cir. 1993). Waivers, however, are strictly construed against the government due to its greater bargaining power and because it usually drafts the plea agreement. See Yushuvayev v. United States, 532 F. Supp. 2d 455, 468 (E.D.N.Y. 2008).

There are, however, narrow exceptions to the general enforceability of waivers,

including:

> (1) when the waiver was not made knowingly, voluntarily, and competently, (2) when the sentence was imposed based on constitutionally impermissible factors, such as ethnic, racial or other prohibited biases, (3) when the government breached the plea agreement, or (4) when the sentencing court failed to enunciate any rationale for the defendant's sentence, thus amounting to an abdication of judicial responsibility subject to mandamus.

Sanford, 841 F.3d at 580 (quoting United States v. Gomez-Perez, 215 F.3d 315, 319 (2d Cir. 2000)).

To determine whether a waiver is enforceable, courts examine the underlying record and may rely on a defendant's sworn statements during the plea allocution, see Salerno v. Berbary, 389 F. Supp. 2d 480, 484 (W.D.N.Y. 2005), which statements "carr[y] such a strong presumption of accuracy that a district court does not, absent a substantial reason to find otherwise, abuse its discretion in discrediting later self-serving and contradictory testimony," United States v. Juncal, 245 F.3d 166, 171 (2d Cir. 2001). But even "a waiver of appellate or collateral attack rights does not foreclose an attack on the validity of the process by which a waiver has been procured," such as a plea agreement. Frederick v. Warden, Lewisburg Corr. Facility, 308 F.3d 192, 195 (2d Cir. 2002). A waiver may thus be unenforceable if the petitioner has a meritorious claim that it was procured as the result of ineffective assistance of counsel. See United States v. Monzon, 359 F.3d 110, 118-19 (2d Cir. 2004). Ineffective-assistance-of-counsel claims involving post-plea events, however, do not survive the waiver. See United States v. Laskaris, No. 11-CR-364, 16-CV-7207, 2018 WL 4863591, at *2 (E.D.N.Y. Sept. 28, 2018) (collecting cases).

Relatedly, the valid entry of a guilty plea "conclusively resolves the question of factual guilt supporting the conviction, thereby rendering any antecedent constitutional

violation bearing on factual guilt a non-issue." United States v. Gregg, 463 F.3d 160, 164 (2d Cir. 2006); see Tollett v. Henderson, 411 U.S. 258, 267, 93 S. Ct. 1602, 1608, 36 L. Ed. 2d 235 (1973) (noting that if a defendant validly admits guilt, "he may not thereafter raise independent claims relating to the deprivation of constitutional rights that occurred prior to the entry of the guilty plea").

Ultimately, the petitioner bears the burden of proving entitlement to relief under § 2255 by a preponderance of the evidence. See Galviz Zapata v. United States, 431 F.3d 395, 399 (2d Cir. 2005) (citing Williams v. United States, 481 F.2d 339, 346 (2d Cir. 1973)); see also Triana v. United States, 205 F.3d 36, 30 (2d Cir. 2000).

**B.    Areizaga-Rosa's Claims**

Construing Areizaga-Rosa's submissions and arguments liberally as required, see Marmolejo v. United States, 196 F.3d 377, 378 (2d Cir. 1999) (per curiam), this Court finds that his claims fall into two categories: (1) claims challenging the entry of the plea; and (2) claims alleging non-plea-related ineffective assistance of trial and appellate counsel. These claims are addressed below.

**1.    Areizaga-Rosa entered his guilty plea knowingly and voluntarily.**

Areizaga-Rosa asserts that he did not knowingly and voluntarily enter his plea because no defendant can validly waive his or her rights prospectively, or as Areizaga-Rosa articulates it, "[a] defendant could never knowingly and intelligently waive the right to appeal or to collateral attack of a sentence, as the sentence has not yet been imposed." (Docket No. 304, ¶. 7-8.) He also contends that the entry of his plea was not knowing and voluntary because it was the product of ineffective assistance of counsel, namely that his lawyer told him that he would receive a 262-month sentence if he was convicted at

trial, but only a 120-month sentence if he entered the plea. (Docket No. 304, pp. 13, 14, 15, 16-17.)

Areizaga-Rosa's first contention is a nonstarter, for the Second Circuit has "long enforced waivers of direct appeal rights in plea agreements, even though the grounds for appeal arose after the plea agreement was entered into." <u>Garcia-Santos v. United States</u>, 273 F.3d 506, 509 (2d Cir. 2001) (citing <u>United States v. Yemitan</u>, 70 F.3d 746, 747-48 (2d Cir. 1995)). The same is true for enforcement of waivers of collateral attack under § 2255. <u>See</u> <u>Garcia-Santos</u>, 273 F.3d at 509 ("The reasons for enforcing waivers of direct appeal [when the grounds for appeal arose after the plea agreement was entered into] lead us to the same conclusion as to waivers of collateral attack under § 2255."). Consequently, Areizaga-Rosa's argument that he could not, as a matter of law, prospectively waive his rights to collateral attack is incorrect.[2] <u>See</u> <u>id.</u> (holding that a waiver of rights to attack a conviction under § 2255 "applies to grounds that arise after, as well as before, [the defendant makes] the waiver"); <u>see</u> <u>also</u> <u>United States v. Harrison</u>, 699 F.3d 158, 159 (2d Cir. 2012) (per curiam) (finding that the petitioner's "inability to foresee that subsequently decided cases would create new appeal issues does not supply a basis for failing to enforce an appeal waiver") (quoting <u>United States v. Riggi</u>, 649 F.3d 143, 150 n. 7 (2d Cir. 2011)); <u>Medina v. United States</u>, 16 Civ. 5043 (AT)(JCF), 94 Cr. 0872 (SAS)(JCF), 2017 WL 476670, at *2 (S.D.N.Y. Feb. 3, 2017) (citing <u>Garcia-</u>

---

[2] Areizaga-Rosa specifically agreed to waive his prospective rights in his plea agreement:

> The defendant understands that by agreeing not to collaterally attack the sentence, the defendant is waiving the right to challenge the sentence in the event that in the future the defendant becomes aware of previously unknown facts or a change in the law which the defendant believes would justify a decrease in the defendant's sentence.

(Plea Agreement, ¶ 19.)

<u>Santos</u> in rejecting a petitioner's argument that his waiver was not knowing and voluntary "because he could not have known 'that he was also waiving a right that didn't exist at the time of the guilty plea'").

Areizaga-Rosa's second contention also fails. He claims that his plea was the product of ineffective assistance of counsel, not a knowing and voluntary decision, because his lawyer told him that he would be sentenced to 262 months' imprisonment if he was convicted at trial, but only 120 months' if he entered the plea. Areizaga-Rosa's plea allocution, however, demonstrates that he knowingly and voluntarily entered his plea.

In addition to Areizaga-Rosa acknowledging in the written plea agreement that he had a full opportunity to discuss the terms of the plea agreement with his lawyer, that he understood all of the consequences of his guilty plea, that he fully agreed with the contents of the plea agreement, and that he was entering the plea agreement voluntarily and of his own free will, he also demonstrated that his plea was knowing and voluntary before this Court:

> Court:      Mr. Convissar [Areizaga-Rosa's lawyer], I take it you've gone over the plea agreement in detail with . . . Mr. Areizaga-Rosa, and tell me what you did and how you went about doing it.
>
> Convissar:  Judge, we did, in fact, go over it in great detail. Mr. Areizaga-Rosa speaks very good English. We also used the services of Miss Egbert with regard to translating the entire document, or just about every word in the entire document, despite the fact that he understood it in English. He reads English, speaks English.
>
> So we went through each of the sections, answered all questions to him. It was translated, of course during the course of that. And then Miss Egbert asked him the final questions of her certification as well. So we

|  |  | were able to fully communicate the terms of this agreement. |
|---|---|---|
| Court: | | All right. Mr. Areizaga-Rosa, is that accurate? |
| Defendant: | | I understand. |
| Court: | | I'm sorry? |
| Defendant: | | I understand, sir, yeah. I understand it. I say yes. I say I understand it. |
| Court: | | Oh, okay. You understand. I'm sorry. |
| Defendant: | | I got a deep accent, but I'm going to try my best. |
| Court: | | . . . But what Mr. Convissar has said, as a result of that are you comfortable with your understanding of the contents of the plea agreement document and also the criminal charge against you? |
| Defendant: | | Yes, your Honor. |

(Plea Transcript, Docket No. 341, pp. 9-11.)

| Court: | | Okay. Are there any other promises that may have been made to you that you are relying on, Mr. Areizaga-Rosa? |
|---|---|---|
| Defendant: | | No. Nobody promised nothing. |
| Court: | | This is the complete agreement, right? |
| Defendant: | | Yes, sir. |

(Plea Transcript, p. 29.)

| Court: | | Okay. All right. That's the agreement. You signed it, Mr. Areizaga-Rosa, on the advice of your attorney? |
|---|---|---|
| Defendant: | | Yes, your Honor. |
| Court: | | Mr. Convissar, you signed and advised your client to sign? |

| Convissar: | I did, both. |

(Plea Transcript, pp. 30-31.)

| Court: | Okay. All right. Then I'm confident, gentlemen, that each of you[3] has entered a plea that is knowing; you understand the terms, conditions and possible consequences, correct, Mr. Areizaga-Rosa? |
| Defendant: | Yes, your Honor. |

. . .

| Court: | Okay. I also find that what you have done here today . . . is voluntary; nobody forced or threatened or intimidated you to do what you just did. Fair statement, Mr. Areizaga-Rosa? |
| Defendant: | I just - - yeah. And I want to say thank you for you hearing me yesterday. |
| Court: | You're welcome. |
| Defendant: | I appreciate it. |

(Plea Transcript, pp. 32-33.)

Areizaga-Rosa also confirmed his mental fitness to enter the plea and his communication with his lawyer:

| Court: | All right. And, Mr. Areizaga-Rosa, you've listened to your attorney's advice and taken into consideration as well? |
| Defendant: | Yes, your Honor. |

. . .

| Court: | Okay. As far as any issues that relate to competency, Mr. Convissar, are there any in your consideration? |
| Convissar: | There are no such issues, Judge. |

---

[3] This Court took Areizaga-Rosa's plea simultaneously with that of a similarly situated co-defendant.

(Plea Transcript, pp. 13-14.)

It is clear from this allocution that Areizaga-Rosa entered his plea knowingly and voluntarily. From this plea colloquy, it can also be determined that Areizaga-Rosa's lawyer did not provide ineffective assistance of counsel as it relates to Areizaga-Rosa's decision to enter the plea.

Not all ineffective-assistance-of-counsel claims are barred by enforceable waivers because "a waiver of appellate or collateral attack rights does not foreclose an attack on the validity of the process by which the waiver has been procured," such as a plea agreement. Frederick, 308 F.3d at 195; see El Saleh v. United States, 13-CV-1567 (DLI), 2016 WL 4734601, at *3 (E.D.N.Y. Sept. 9, 2016) ("[A] defendant cannot be bound by an appeal waiver if the decision to enter a plea agreement was the product of counsel's ineffective assistance") (citing Hernandez, 242 F.3d at 114)). Thus, "[a]n ineffective assistance of counsel claim survives the guilty plea or the appeal waiver *only* where the claim concerns the advice the defendant received from counsel." Parisi v. United States, 529 F.3d 134, 138-39 (2d Cir. 2008) (emphasis added). This is because, if a petitioner challenges counsel's effectiveness in connection with the plea agreement itself, he is in essence challenging the constitutionality of the process by which he waived his right to collaterally attack the sentence, and his claim therefore survives the waiver. Id. ("although challenging the attorney's role in shaping the defendant's bargaining position cannot avoid the waiver, challenging the attorney's advice about that bargaining position, by connecting the knowing and voluntary nature of the defendant's plea decision with the attorney's conduct, does."); see also El Saleh, 2016 WL 4734601, at *3 ("[W]here an attorney's ineffective assistance caused a defendant to agree to a waiver, a court must

14

look past the waiver and examine the underlying merits of the ineffective assistance claim."). In short, ineffective-assistance-of-counsel claims that affect the plea process survive the waiver, and those that do not, do not. See id. at *5.

Here, Areizaga-Rosa maintains that his lawyer misinformed him about the possible sentences he faced. He claims that his lawyer told him that he would be sentenced to 262 months' imprisonment if he was convicted at trial, but only 120 months' if he entered the plea, and that these representations were erroneous and caused him to enter the plea. This contention, however, is not borne out by the plea allocution, during which this Court thoroughly explained the sentencing possibilities to Areizaga-Rosa, and during which Areizaga-Rosa confirmed his understanding of the sentencing possibilities:

> Court: . . . we're talking about an 11 (c)(1)(C) plea, and I still have to decide what the fair sentence should be. And the sentence should be sufficient, but not greater than necessary. And that's the way I will approach looking at the sentence. Mr. Areizaga-Rosa, do you understand?

> Defendant: Yes, I understand.

(Plea Transcript, pp. 4-5.)

> Court: And that in your case, Mr. Areizaga-Rosa, you face a mandatory minimum term of five years in jail and a maximum of 40 years, with a $5 million fine and supervised release between five years and up to life with that same $100 special assessment, which is the cost of doing business on the charge here in federal court. Do you understand your exposure?

> Defendant: Yes, your Honor.

(Plea Transcript, p.17.)

> Court: Okay. All right. Now we're going to talk about

the next section, which is the section that relates to the guidelines, and I know, Mr. Areizaga-Rosa, you know about the guidelines. Just talking to you yesterday you probably know them better than Mr. Convissar does and probably better than I know them.[4]

Convissar:     I don't know that I could beat him, but we might tie, Judge.

Defendant:     I think so. I think so.

Convissar:     I don't know if I could beat him.

Court:     Okay. And well you should, because that's your life that is involved in those calculations . . .

And you know what we're talking about when we say sentencing guidelines, right?

. . .

Defendant:     Yes, sir.

Court:     Okay. And the guidelines run on a series of numbers, and basically the crime gets a number, and then based on the facts and the evidence and the circumstances, adjustments are made to those numbers until a final sentencing number takes place. And that final sentencing number is sometimes called the total offense level number. And the starting point is basically the base number. Then the adjustments, as explained in detail in your plea agreements, are added or subtracted until we get to the sentencing number. It's sometimes called the total offense level number.

And in both of your cases, as you will see in the guidelines calculations, the numbers are the same and they're contained in paragraph 11. The number for the crime, when calculated out, appears to be a number 32, with a criminal history category . . . Mr. Areizaga-Rosa,

---

[4] Areizaga-Rosa had spent the previous day, December 12, 2013, reviewing the government's plea offer with Mr. Convissar. (See Docket Nos. 230, 348.)

|  |  |
|---|---|
|  | somewhere between a four and a six will be your criminal history score in all likelihood. Do you understand? |
| Defendant: | Yeah, I understand, your Honor. |

. . .

|  |  |
|---|---|
| Court: | Okay. And, you know, depending on the final numbers, because that's what you've asked me to do yesterday to make sure that that's reasonable and that it's correct. But the number that's in the plea agreement document is a 15-year number. |

. . .

|  |  |
|---|---|
|  | Okay. And in your case, Mr. Areizaga-Rosa, the months if you are a four with a criminal history, is 168 to 210. Lot of months, right? |
| Defendant: | I agree with that. |
| Court: | Yeah. And if you're a six, it's even higher, 210 to 262 months. A lot of months. |
| Defendant: | I agree with that. |

. . .

|  |  |
|---|---|
| Court: | Okay. All right. Now, again, keep in mind that the - - if you are - - if I review everything that's going to be given to me, and I will from the probation office, I will review it in the context of the agreement here that the sentence should be 15 years. And if I cannot sentence you to that as a sentence that's sufficient but not greater than necessary, you will get the opportunity to withdraw your plea of guilty. Mr. Areizaga-Rosa, you understand? |
| Defendant: | I understand, sir. |
| Court: | That's acceptable to you? |
| Defendant: | It's acceptable. |

(Plea Transcript, pp. 22-26.)

Finally, contrary to his present claim that his lawyer promised him that he would receive a 10-year sentence if he pleaded guilty, Areizaga-Rosa admitted during his plea allocution that no such promises were made:

> Court:      Okay. Are there any other promises that may
>             have been made to you that you are relying on,
>             Mr. Areizaga-Rosa?
>
> Defendant:  No. Nobody promised nothing.
>
> Court:      This is the complete agreement, right?
>
> Defendant:  Yes, sir.

(Plea Transcript, p. 29.)

This colloquy flatly refutes Areizaga-Rosa's contention that he entered his guilty plea believing that he would be sentenced to 262 months' imprisonment if convicted at trial but only 120 months' if he entered a guilty plea. While 262 months was the high end of the Guidelines range, this Court plainly told Areizaga-Rosa that its duty was to examine all of the materials and then determine a fair, just, and reasonable sentence. Areizaga-Rosa confirmed his understanding of how sentencing would proceed. He also confirmed that he understood that he was facing a 15-year sentence if this Court accepted the Rule 11 (c)(1)(C) provision of his plea agreement, and that he had thoroughly discussed each of the terms of his plea agreement with his lawyer. He also confirmed that no promises other than those contained in the plea agreement had been made to him. Relying on these sworn statements, this Court finds that Areizaga-Rosa's entry of his guilty plea was not the product of ineffective assistance of counsel, but rather, was a knowing, voluntary, and intelligent decision. This claim therefore fails. See Juncal, 245 F.3d at 171 ("[Plea

allocution] testimony carries such a strong presumption of accuracy that a district court does not, absent a substantial reason to find otherwise, abuse its discretion in discrediting later self-serving and contradictory testimony as to whether a plea was knowingly and intelligently made.") (citing Blackledge v. Allison, 431 U.S. 63, 74, 97 S. Ct. 1621, 52 L. Ed. 2d 136 (1977) ("Solemn declarations in open court carry a strong presumption of verity. The subsequent presentation of conclusory allegations unsupported by specifics is subject to summary dismissal, as are contentions that in the face of the record are wholly incredible.")).

### 2. Areizaga-Rosa's non-plea-related ineffective-assistance-of-counsel claims fail.

Areizaga-Rosa asserts a number of non-plea-related ineffective-assistance-of-counsel claims. First, he asserts that trial counsel was ineffective at sentencing because he (1) failed to inform Areizaga-Rosa that he could challenge the application of a sentencing enhancement and failed to object to that enhancement, (2) failed to challenge his criminal history calculation, (3) failed to object to the government's sentencing presentation, (4) failed to challenge this Court's determination of relevant conduct, and (5) failed to argue that his guilty plea was not supported by the factual basis. (Docket No. 304, pp. 5, 14, 15, 17; Docket No. 356, pp. 3-7, 7-9.) Second, Areizaga-Rosa maintains that appellate counsel was ineffective because he failed to attack the factual basis for the plea and this Court's consideration of relevant conduct on appeal. (Docket No. 356, pp. 9-11.)

Having found that Areizaga-Rosa entered his guilty plea knowingly and voluntarily, this Court must enforce the waiver provisions of the plea.[5] In paragraphs 18 and 19 of

---

[5] In an undeveloped argument, Areizaga-Rosa also suggests that the waiver provisions may not be

the plea agreement, Areizaga-Rosa agreed to waive his rights to appeal and collaterally attack his guilty plea and sentencing if this Court sentenced him within or less than the calculated sentencing range for imprisonment, which it did. That waiver is therefore enforceable and bars each of Areizaga-Rosa's ineffective-assistance-of-counsel claims that do not involve his decision to enter the plea. Consequently, because Areizaga-Rosa's claims of ineffective assistance of counsel at sentencing and on appeal do not challenge the constitutionality of the process by which he waived his collateral attack and appeal rights, they are barred by the waiver and must be denied. See Parisi, 529 F.3d at 138-39; see also United States v. Djelevic, 161 F.3d 104, 107 (2d Cir. 1998) ("[D]efendant claims that his waiver should not bar consideration of his appeal because counsel was ineffective not at the time of the plea, but at sentencing. We emphatically reject this contention."); United States v. Jimenez, 106 F. App'x 92, 93 (2d Cir. 2004) (citing Monzon, 359 F.3d at 118 ("[A] claim of ineffective assistance is waived when . . . it attacks the sentence itself and not the underlying plea agreement that supported the sentence.")).

## C.    Evidentiary Hearing

In his motion, Areizaga-Rosa requests the opportunity to advance his claims at an evidentiary hearing. As indicated above, § 2255 provides that a court shall hold an evidentiary hearing "[u]nless the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief." Rule 4 (b) also provides that "[i]f it plainly appears from the motion, any attached exhibits, and the record of prior proceedings that the moving party is not entitled to relief, the judge must dismiss the motion . . . ."

enforceable because the government breached the plea agreement by not committing to a criminal history category calculation. (Docket No. 304, p. 14.) There was, however, no breach of the agreement by the government, and, in any event, the calculation of Areizaga-Rosa's criminal history category under the terms of the plea agreement does not affect the enforceability of the waiver provisions.

Here, no evidentiary hearing is required because Areizaga-Rosa's motion and the record conclusively demonstrate that Areizaga-Rosa is entitled to no relief under § 2255. Consequently, this Court finds that no hearing is warranted or required.  See Orbach v. United States, 11 Cr. 111 (NRB), 2017 WL 5632815, at *7 (S.D.N.Y. Nov. 7, 2017) (denying request for a § 2255 hearing where "[t]he existing record is conclusive that petitioner is not entitled to relief on any theory presented to [the court]").

**D.     Certificate of Appealability**

For a certificate of appealability to issue, a petitioner must make a "substantial showing of the denial of a constitutional right."  28 U.S.C. § 2253 (c)(2).  To make the required "substantial showing," Areizaga-Rosa must establish that "reasonable jurists could debate whether . . . the petition should have been resolved in a different manner or that the issues presented were adequate to deserve encouragement to proceed further." Rhagi v. Artuz, 309 F.3d 103, 106 (2d Cir. 2002) (per curiam) (citations and internal quotation marks omitted).  Areizaga-Rosa has made no such substantial showing of the denial of a constitutional right in this case.  A certificate of appealability will therefore not be issued.

**IV. CONCLUSION**

For the reasons stated above, Areizaga-Rosa's Motion to Vacate, Set Aside or Correct his Sentence is denied.  If Areizaga-Rosa wishes to appeal, he must file a Notice of Appeal with the Clerk's Office, United States District Court, Western District of New York, within 60 days of the date of judgment in this action.  Requests to proceed on appeal as a poor person, if any, must be filed with the United States Court of Appeals for the Second Circuit, in accordance with the requirements of Rule 24 of the Federal Rules of

Appellate Procedure.

## V. ORDERS

IT HEREBY IS ORDERED, that Petitioner's Motion to Vacate, Set Aside or Correct his Sentence and Conviction under 28 U.S.C. § 2255 (Docket No. 304) is DENIED.

FURTHER, that this Court hereby certifies, pursuant to 28 U.S.C. § 1915 (a)(3) and Rule 24 (a)(3) of the Federal Rules of Appellate Procedure, that any appeal from this Decision and Order would not be taken in good faith and therefore leave to appeal as a poor person is DENIED.  See Coppedge v. United States, 369 U.S. 438, 82 S. Ct. 917, 8 L. Ed. 2d 21 (1962).

FURTHER, that a Certificate of Appealability under 28 U.S.C. § 2253 is DENIED.

FURTHER, that the Clerk of Court is directed to CLOSE 14-CV-540S.

SO ORDERED.


Dated:          November 12, 2018
                Buffalo, New York

                                        /s/William M. Skretny
                                         WILLIAM M. SKRETNY
                                        United States District Judge